THE MANUFACTURERS' BANK OF MACON, plaintiff in error, *vs.* W. L. & HAYNE ELLIS, defendants in error.

1. Under the charter of the Manufacturers' Bank of Macon, it had no authority, in the year 1862, to issue bills intended to be redeemed in Confederate treasury notes, and therefore the ordinance of 1865 is inapplicable to such contracts.

2. The bills sued on in this case were issued prior to the passage of the act of November 29th, 1862, authorizing the suspension of specie payment by the banks upon certain conditions, and therefore the defendant can derive no benefit from it.

3. To make a contract illegal as being in aid of the rebellion, as provided by the 17th section of the Vth article of the constitution of this state, it should be alleged with whom the contract was made, and the terms of it, and that it was made with the intention and for the purpose of aiding and encouraging the rebellion, and the consideration therefor

The Manufacturers' Bank of Macon *vs.* Ellis.

should be alleged, so that the court could determine from the facts whether the contract was made with the intention and for the purpose of aiding the rebellion.

Banks. Scaling ordinance. Constitutional law. Contracts. Pleading. Before Judge HILL. Bibb Superior Court. April Term, 1873.

For the facts of this case, see the decision.

LANIER & ANDERSON, for plaintiff in error.

A. O. BACON ; A. T. AKERMAN, representing the same principles in other cases, for defendants.

WARNER, Chief Justice.

This was an action brought by the plaintiffs against the defendant to recover the amount of certain described bank bills issued by the defendant, payable to bearer, a part of which were issued before the war, and the other part thereof, were issued in May and June, 1862. The defendant filed two pleas, alleging that the bills issued in 1862 were issued and used as Confederate currency, and in aid of the Confederate government, in the war between it and the United States, and were illegally issued. That the bills issued in 1862 were intended, and universally understood, to be payable in Confederate treasury notes, and should be scaled under the ordinance of 1865. The plaintiffs demurred to the plaintiff's pleas. The court sustained the demurrer, and defendant excepted.

1. The questions involved in the defendant's pleas were decided by this court in the case of the *Manufacturers' Bank of Macon vs. Lamar*, 46 *Georgia Reports*, 563. But we have been requested by the plaintiffs in error to review that decision in view of the provisions of the act of 1862. In addition to the reasons given for the judgment of the court in that case we would remark that the act incorporating the defendant and authorizing it to issue bills, was passed on the 23d

day of February, 1850. When the defendant accepted that charter it was bound by the terms of it, and all bills issued by it were issued by the authority of that charter, the same being a contract between it and the state. The defendant had no authority to issue bills in 1862 under any other charter but that, and there can be no pretense that in the exercise of the franchise and privileges granted to it by that charter in issuing bills in 1862, that it was aiding the rebellion, and when it assumes by its plea that it has done so, it repudiates the validity of a public law of the state, to which it owes its existence.

2. The act of 29th November, 1862, did nothing more than relieve the defendant from the penalty incurred by refusing to redeem its bills in gold and silver, upon certain terms and conditions, one of which was that it should receive treasury notes of the state of Georgia, and of the Confederate States, and bills of all solvent banks, in payment of all dues, and upon deposit at par value. The General Assembly said to the defendant if it carried on its banking business as authorized by its charter without redeeming its bills in specie and be relieved from the penalties incurred, it must do certain things, but there is nothing in the act of 1862 which authorized or required the defendant to issue bills under its charter payable in Confederate money, or in any other currency than gold and silver. But the bills now sued on, which were issued in 1862, were issued by the defendant in May and June of that year, before the act of 29th of November, 1862, was passed. The bills were issued by the defendant and put into circulation as money, under the authority of a public law of the State, enacted in 1850, and in pursuance of a contract made with the State for that purpose, and there is no legal ground for saying that the bills were issued in aid of the rebellion, and it does not become the defendant to so allege in the face of that public law which created it, and from which it derives its existence.

3. It is true the defendant might have made an illegal contract, and have consummated it in the payment of its bills as

The Manufacturers' Bank of Macon *vs.* Ellis.

the consideration therefor, but the payment of the consideration in its own bills, which it had lawful authority to issue, would not on that account have made the contract any more illegal than if the consideration had been paid by it in the bills of any other bank authorized to issue its bills as money.

What was the contract between the defendant and the party who received its bills now sued on, and the consideration of that contract? Who was the party making that contract? What was the intention of the parties to that contract? What was the consideration received by the defendant for its bills now sued on at the time it paid them out? It is not sufficient for the defendant to allege, in general terms, that the bills sued on were issued and used *as* Confederate currency, in aid of the Confederate government, in the war between it and the United States, and that many of said bills were actually furnished by said bank to agents of the Confederate government in exchange for Confederate treasury notes to enable the latter to pay off persons in the employment of the government of the Confederate States, and to make change for that purpose. To make a contract illegal, as being in aid of the rebellion, as provided by the 17th section of the Vth article of the constitution of this state, it should be alleged with whom the contract was made, and the terms of it, and that it was made with the intention and for the purpose of aiding and encouraging the rebellion, and the consideration therefor should have been alleged, so that the court could determine, from the facts alleged, whether the contract was made with the intention and for the purpose of aiding the rebellion. The bills sued on, which were issued by the defendant in 1862, as has been already stated, were issued under a charter granted by the state to the defendant, whereby the defendant was authorized to issue bills and circulate the same as money, on the terms and conditions specified therein. The bills of the defendant were issued and put in circulation in pursuance of the contract made by the defendant with the state when it accepted the terms of its charter. When the defendant issued the bills in question, it exercised one of the franchises which its

charter conferred upon it.   The bills were not, and could not have been, payable in Confederate money.   The plea does not allege with whom the contract was made by defendant when it paid out the bills sued on, or what was the consideration which the defendant received for the bills, or the value thereof, even if a contract made by the defendant with the state in 1850, to redeem its bills in gold and silver, could be scaled under the ordinance of 1865.

In this case, the defendant cannot derive any assistance from the act of 29th of November, 1862, because the bills were issued some months before the passage of that act.   Whilst we know that human tribunals are not infallible, and have no power to make parties satisfied with the judgments thereof, (which would be entirely ineffectual if they had, when the judgment is against a party,) still this court has the power and authority, under the constitution and laws of the state, not to compel parties to be *satisfied,* but to compel them to *acquiesce* in its judgments when made on full consideration of the questions involved therein.

Let the judgment of the court below be affirmed.